CV 14                    1484

PELTON & ASSOCIATES PC
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Joanne Albertsen (JA 6439)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

ANDREW KIM, Individually and on Behalf of All
Others Similarly Situated,

$\quad\quad\quad\quad\quad\quad\quad\quad\quad$ **Plaintiff,**

-against-

NEVADA DINER, INC. d/b/a FABULOUS NEVADA
DINER, DISKAL, INC. d/b/a GEORGIA DINER,
DIMITRIOS KALOIDIS, and JOHN DOE CORPS #1-
10, Jointly and Severally,

$\quad\quad\quad\quad\quad\quad\quad\quad\quad$ **Defendants.**

**CLASS & COLLECTIVE
ACTION COMPLAINT**

**Jury Trial Demanded**

## NATURE OF THE ACTION

1.      Plaintiff is a former server at Defendants' Fabulous Nevada Diner located in
Queens, New York. Plaintiff brings this action to recover unpaid minimum wages and overtime
premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C.
§§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiff also brings
claims for unpaid spread-of-hours premiums, for uniform violations, and for failure to provide
proper wage notices and wage statements pursuant to the NYLL and the supporting regulations.
Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees
of Defendants and the NYLL claims on behalf of himself and a Federal Rule of Civil Procedure

1

23  class of all waiters, cooks, dishwashers, bussers, and all other hourly employees working for Defendants in New York.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

5.      Plaintiff ANDREW KIM ("Kim" or the "Plaintiff") was, at all relevant times, an adult residing in Queens County, New York.

6.      Throughout the relevant time period, Plaintiff performed work for Defendants at Fabulous Nevada Diner, located at 80-26 Queens Boulevard, Elmhurst, New York 11373.

7.      Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his written consent form is attached hereto and incorporated by reference.

**Defendants:**

8.      Upon information and belief, Nevada Diner, Inc. d/b/a Fabulous Nevada Diner ("Nevada Diner") is an active New York Corporation with its principle place of business at 80-26 Queens Boulevard, Elmhurst, New York 11373.

9.      Upon information and belief, Diskal Inc. d/b/a Georgia Diner ("Georgia Diner")

is an active New York Corporation with its principle place of business at 86-55 Queens Boulevard, Elmhurst, NY 11373.

10.    Upon information and belief, John Doe Corps #1-10 represent the corporate entities that operate Defendant Kaloidis' other diner restaurants throughout the New York City region, which are operated utilizing the same policies and practices as Nevada Diner and Georgia Diner. John Doe Corps #1-10, Nevada Diner, and Georgia Diner are hereinafter referred to collectively as the "Kaloidis Diner Enterprise" or the "Corporate Defendants."

11.    Defendant Dimitrios Kaloidis ("Kaloidis" and collectively with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants who sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein. Throughout the relevant time period, upon information and belief, Kaloidis was in charge of determining the Corporate Defendants' policies with respect to payroll, and otherwise running the business of the Kaloidis Diner Enterprise, including Nevada Diner and Georgia Diner.

12.    Defendant Kaloidis participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously in his direction and control of Plaintiff and the Corporate Defendants' other similarly situated employees, and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13.    Pursuant to 29 U.S.C. §§ 206 & 207, Plaintiff brings his First and Second Causes of Action as a collective action under the FLSA on behalf of himself and all other waiters, cooks,

3

dishwashers, bussers, and other hourly employees (the "Collective Action Members") who are or were employed by the Defendants since March 5, 2011 and through the entry of judgment in this case (the "Collective Action Period").

14.    A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of this policy, Plaintiff and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

## RULE 23 CLASS ALLEGATIONS

15.    Pursuant to the NYLL, Plaintiff brings his Third through Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all waiters, cooks, dishwashers, bussers, and other hourly employees who are or were employed by Defendants within New York (the "Class Members") at any time since March 5, 2008 and through the entry of judgment in this case (the "Class Period").

16.    The Class Members are readily ascertainable.  The number and identity of the Class Members are determinable from the records of Defendants.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

17.    The Class Members are so numerous that joinder of all members is impracticable.

18.    Upon information and belief, there are well in excess of forty (40) Class

4

Members.

19.     There are questions of law and fact common to the claims of Plaintiffs and the claims of the Class, including whether Defendants had a corporate policy of: failing to pay wages for all hours worked; failing to pay minimum wage for all hours worked; failing to pay overtime premiums when employees worked in excess of forty (40) hours per week; and failing to pay spread-of-hours premiums for days in which employees worked in excess of ten (10) hours or split shifts.

20.     Plaintiff's claims are typical of the Class Members' claims, and Plaintiff will fairly and adequately represent the Class. There are no conflicts between Plaintiff and the Class Members and Plaintiffs' counsel is experienced in handling class litigation.

21.     The Third through Eighth Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Class that predominate over any questions solely affecting the individual members of the class, including but not limited to:

a.     whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b.     whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

c.     what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.     whether Defendants failed and/or refused to pay Plaintiff and the Class Members wages for all hours worked;

e.     whether Defendants failed and/or refused to pay Plaintiff and the Class Members

minimum wage for all hours worked;

f.    whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

g.    whether Defendants failed and/or refused to accurately credit Plaintiff and the Class Members for all hours worked;

h.    whether Defendants failed and/or refused to pay Plaintiff and the Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

i.    whether Defendants failed to furnish to Plaintiff and the Class Members with statements of wages, hours worked, rates paid and gross wages, as required by the NYLL;

j.    whether Defendants failed to provide proper wage notice to Plaintiff and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

k.    whether Defendants failed to reimburse Plaintiff and the Class Members for the cost of their uniform;

l.    whether Defendants failed to pay Plaintiff and the Class Members uniform maintenance pay; and

m.    whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

22.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present

action, where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants. The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

23.     At all relevant times, Defendants have been in the food service business. Upon information and belief, Defendants currently own, operate, and manage diners in [at least] four (4) locations around New York City, including: Nevada Diner at 80-26 Queens Boulevard, Elmhurst, New York 11373; Georgia Diner at 86-55 Queens Boulevard, Elmhurst, NY 11373; Arch Diner at 1866 Ralph Avenue, Brooklyn, New York 11234; and the Floridian Diner at 2301 Flatbush Avenue, Brooklyn, New York 11234.

24.     Defendants own, operate, and manage these diners, including Nevada Diner and Georgia Diner, as a single integrated business enterprise (the "Kaloidis Diner Enterprise") using the same business practices and policies in all locations.

25.     Defendants' operations are interrelated and unified.

26.     Upon information and belief, when Nevada Diner was renovated and opened in or around May 2013, staff from Georgia Diner were transferred to Nevada Diner, and Nevada Diner and Georgia Diner continue to employ their staff interchangeably.

27.     Staff at both diners are paid in the same manner regardless of which location they work. Defendants' employee, Cathy "Doe," handles the payroll for both Nevada Diner and Georgia Diner. Although Plaintiff Kim worked out of the Nevada Diner location, on one occasion, Kim was directed to walk to Georgia Diner to discuss his payroll with Cathy "Doe"

because it was understood by Kim and the other employees that both diners were operated as a single business.

28.     Upon information and belief, Defendant Kaloidis is in constant contact with the managers of both Nevada Diner and Georgia Diner, to ensure that the diners are operating in accordance with his standards and policies.

29.     Upon information and belief, Nevada Diner is open Monday through Friday from 8:00 am until 12:00 am, and Saturday and Sunday from 12:00 am to 12:00 am, while Georgia Diner is open 24 hours a day, 7 days a week.

30.     At all relevant times, Defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

31.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

32.     At all relevant times, Plaintiff, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

33.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

34.     Plaintiff Kim worked for Nevada Diner as a waiter from in or around July 1, 2013 through in or around August 15, 2013 (the "Kim Employment Period").

35.     Throughout the Kim Employment Period, Plaintiff Kim was typically scheduled to work from between approximately 5:00 pm and 6:00 pm to between approximately 1:00 am and 2:00 am, and sometimes more, six (6) days per week. Kim also covered shifts for other employees whereby, in addition to his typical schedule, he would work the morning shift from

approximately 8:00 am until approximately 4:00 pm. Therefore, throughout the Kim Employment Period, Kim typically worked a total of between approximately sixty (60) and eighty (80) hours per week, and sometimes more.

36.    Plaintiff Kim and all employees of Defendants were required to punch in and out by use of a hand-scan machine that logged their hours. On at least one occasion, Plaintiff Kim was nevertheless credited for fewer hours than he worked.

37.    During the Kim Employment Period, Plaintiff Kim was paid $5.00 per hour for hours worked up to forty (40) per week. During the first two (2) weeks of the Kim Employment period, Plaintiff Kim was paid $5.00 per hour for hours worked in excess of forty (40) hours per week. After the first two (2) weeks, during the remainder of the Kim Employment Period, Plaintiff Kim was paid $2.00 per hour for hours worked in excess of forty (40) hours per week.

38.    During the Kim Employment Period, each Wednesday or Thursday Kim received a paycheck for hours worked up to forty (40) per week. Each Tuesday, Kim received an envelope which contained his payment in cash for hours worked in excess of forty (40) per week, paid at straight-time rates or usually significantly less, with the amount of wages written on the inside flap of the envelope. Each week, Kim was required to sign a paper indicating that he received his cash payment. Kim was not provided a wage statement with the cash payments.

39.    During approximately the third week of the Kim Employment Period, upon receiving his cash payment for overtime hours, Plaintiff Kim asked a manager why he had received only $40.00 in cash for approximately forty (40) hours of overtime and, in response to his question, was told to go home. When Plaintiff Kim spoke with his colleagues about the low overtime pay rate, they responded that that was typical for both Nevada Diner and Georgia Diner.

40.     Notwithstanding the fact that Plaintiff Kim frequently worked more than ten (10) hours in a single day, or a split shift, Defendants failed to pay Kim spread of hours premium pay equal to an additional hour at minimum wage for all such instances when he worked more than ten (10) hours in a day or a split shift.

41.     Plaintiff Kim also spoke with his manager, "Josoi," regarding the amount he was paid for his overtime hours, and "Josoi" confirmed that he was supposed to receive $2.00 per hour for hours over 40 per week and that he should be thankful that a mistake was made when he received $5.00 for his overtime hours.

42.     Plaintiff Kim was subsequently terminated from his position at Nevada Diner on or around August 15, 2013.

43.     Many of the Defendants' employees are paid their wages entirely in cash, "off-the-books." Upon information and belief, the wait staff employees who are paid "off-the-books" are paid $2.00 per hour for all hours, not just those hours worked in excess of forty (40) each week. Upon information and belief, these employees do not receive a wage statement with their cash payments each week.

44.     Defendants required Plaintiff and Class Members to purchase certain uniforms consisting of a tie and vest with a distinct pattern, to be worn with a white shirt and black pants, for which Defendants deducted the cost from Plaintiff and Class Members' wages. Defendants also required that Plaintiff and Class Members maintain their uniforms, but Defendants did not provide Plaintiff and Class Members any uniform maintenance pay.

45.     Notwithstanding the fact that Plaintiff and other Class Members frequently worked more than ten (10) hours in a given day, Defendants failed to pay them spread of hours premiums equal to an additional hour of minimum wage for each hour worked in excess of ten

(10) in a given day. Defendants' failure to pay Plaintiffs and Class Members spread of hours premiums was a corporate policy that applied to all of Defendants' employees working shifts of more than ten hours in one day and/or split shifts.

46.     Plaintiff has spoken with other employees of Defendants, who similarly worked in excess of forty (40) hours per week during the Class Period and were similarly paid below their regular rate for hours worked over forty (40). Defendants' failure to pay Plaintiff and Class Members overtime compensation of one and one-half their regular hourly rate for hours over forty (40) each week was a corporate policy of Defendants, which applied to all of their hours throughout the relevant period.

47.     Plaintiff has also spoken with non-tipped employees of Defendants, including cooks, dishwashers and bussers, who were on a purported "salary" basis. Upon information and belief, a significant number of the Defendants' kitchen employees are paid "off the books." Such employees do not receive a breakdown of the hours worked, the hourly rate, or any details as to tax withholdings.

48.     Defendants did not provide Plaintiff or Class Members will proper wage notices at the time of hire or on February 1 of each year.

49.     Plaintiff and the Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages and overtime premiums.

50.     Plaintiff's work was performed in the normal course of Defendants' business and was integrated into Defendants' business.

51.     The work performed by Plaintiff required little skill and no capital investment

52.     Throughout the Class Period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiff in positions that

require little skill and no capital investment. Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half when working in excess of forty (40) hours per week.

53.     As stated, the exact number of such similarly situated individuals is presently unknown but is believed to be well in excess of forty (40) individuals and can be ascertained through appropriate discovery.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE

54.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

55.     By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

56.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

57.     Defendants' failure to pay minimum wages for all hours worked caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon. By failing to pay Plaintiff and the Collective Action Members the tipped minimum wage for all hours worked, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage. Therefore, Plaintiff and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME

58.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

59.     By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

60.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

61.     Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon.   Plaintiff and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID MINIMUM WAGE

62.     Plaintiff, on behalf of himself and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

63.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay minimum wage for all hours worked, in violated of the NYLL and regulations promulgated thereunder.

64.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FOURTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME

65.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

66.    Defendants willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

67.    Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

### FIFTH CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS

68.    Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

14

69.     Defendants willfully violated Plaintiff's and the Class Members' rights by failing

to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all

instances where the Class Members worked either a split shift or more than 10 hours per day, in

violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including

N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146.16 (2012).

70.     Defendants' failure to pay spread-of-hours compensation caused Plaintiff and the

Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are

entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for

unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and

costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## SIXTH CAUSE OF ACTION
## NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE

71.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each

and every allegation of the preceding paragraphs hereof with the same force and effect as though

fully set forth herein.

72.     Defendants have willfully failed to supply Plaintiff and the Class Members notice

as required by Article 6, § 195, in English or in the language identified by Plaintiff and the Class

Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of

pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or

other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay

day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the

employer; or any "doing business as" names used by the employer' the physical address of the

employer's main office or principal place of business, and a mailing address if different; the

telephone number of the employer; plus such other information as the commissioner deems material and necessary.

73.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENT**

74.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

75.     Defendants have willfully failed to supply Plaintiff and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

76.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages

as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**EIGTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNIFORM VIOLATIONS**

77.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

78.     Defendants willfully violated the rights of the Plaintiffs and the Class Members by failing to reimburse them for the purchase of their required uniforms, and by failing to provide them with uniform maintenance pay, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.8 (2009), 146-1.7 & 1.8 (2011).

79.     Defendants' uniform violations caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants the amount that Defendants failed to reimburse Plaintiffs and Class Members for the purchase of their uniforms and the amount that they failed to pay Plaintiffs and Class Members for the maintenance of such uniforms, damages for unreasonably delayed payment of wages liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL § 663(I) *et al.*

**PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a.   Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.   Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class;

c.   An order tolling the statute of limitations;

d.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.   An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.   An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.   An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.   An award of damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.   An award of damages arising out of the improper uniform expense deductions and unpaid uniform maintenance costs under the NYLL;

j.   Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b.

k.   One hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d.

l.   An award of prejudgment and post-judgment interest;

m.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n.   Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.


Dated: New York, New York
March 5, 2014

PELTON & ASSOCIATES PC

By: _____
Brent E. Pelton (BP 1055)

Taylor Graham (TG 9607)
Joanne Albertsen (JA 6439)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff and the putative collective
and class*

20

August 9, 2013
Page 7

CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Nevada Diner, Dimitrios Kaloidis, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me minimum wage and overtime as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

| _____ | _____ | _____ |
| Signature | Date | Printed Name |