**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ANDREW KIM, GREGORIO LOPIC, JORGE SÁNCHEZ, MAURICIO VAZQUEZ, GERMÁN JIMÉNEZ, JUAN HERNANDEZ and EDWARD CORTÉS, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiffs,** | **14 Civ. 01484 (MKB)(RLM)** |
| **-against-** | |
| **NEVADA DINER, INC. d/b/a FABULOUS NEVADA DINER, DISKAL, INC. d/b/a GEORGIA DINER, DIMITRIOS KALOIDIS , PAUL P. KERANTZAS, and JOHN DOE CORPS #1-10, Jointly and Severally,** | |
| **Defendants.** | |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release, including the exhibit(s) hereto (collectively, the "Agreement") is entered into by named plaintiffs Andrew Kim, Gregorio Lopic, Jorge Sanchez, Mauricio Vazquez, German Jimenez, Juan Hernandez and Edward Cortes (the "Named Plaintiffs" or "Plaintiffs") individually and on behalf of a class of individuals they seek to represent (as defined herein) and by Class Counsel, as defined herein, and by Defendants Nevada Diner, Inc., Diskal, Inc., Dimitrios Kaloidis (the "Wage and Hour Defendants") and Paul P. Kerantzas ("Kerantzaas" and collectively with the Wage and Hour Defendants, the "Defendants") and, together with Plaintiffs, the "Parties").

**1. RECITALS AND BACKGROUND**

WHEREAS, a Class & Collective Action Complaint in the above captioned action was filed by Plaintiff Andrew Kim on March 5, 2014, in which claims were asserted against the Wage and Hour Defendants under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and New York Labor Law ("NYLL") for the alleged failure to pay minimum wage for all hours worked and overtime premiums for all hours worked in excess of forty (40) hours per week;

WHEREAS, on May 5, 2014, Plaintiffs Gregorio Lopic, Mauricio Vazquez and Juan Hernandez filed an action against Defendants Diskal, Inc. and Kaloidis (the "Lopic Action");

WHEREAS, at the Court's direction, the Plaintiffs from both actions filed a consolidated Amended Complaint on July 9, 2014.

WHEREAS, Plaintiffs filed a Second Amended Complaint on November 14, 2014, asserting allegations and claims against the Wage and Hour Defendants for unlawful retaliation under the FLSA and NYLL.

WHEREAS, on January 9, 2015, Plaintiffs served their Motion to Conditionally Certify a Fair Labor Standards Act Collective Action and Authorize Notice to be Issued to All Persons Similarly Situated ("Plaintiffs' Motion"). Defendants served their Opposition on January 28, 2015 and Plaintiffs served their Reply on February 5, 2015. As of the date of the Settlement, the Court had not yet ruled on Plaintiffs' Motion.

WHEREAS, on February 18, 2015, Plaintiffs filed their Third Amended Complaint against Defendants, adding Kerantzas as a Defendant and asserting allegations and claims for fraudulent filing of information returns pursuant to 26 U.S. Code § 7434;

WHEREAS, on April 22, 2015, the Parties participated in a settlement conference before Magistrate Judge Roanne L. Mann, who was instrumental to the Parties reaching this Agreement;

WHEREAS, Defendants have contested and denies all of the allegations made by Plaintiffs in the Litigation, and denies any and all liability for damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation;

WHEREAS, Class Counsel have conducted an investigation into the facts raised by the Complaint and participated in significant discovery, motion practice, settlement discussions, a full-day mediation and a settlement conference. Class Counsel recognizes that Defendants have viable defenses to Plaintiffs' claims.

WHEREAS, the Parties do not abandon their respective positions on the merits of the Litigation. Nonetheless, the Parties recognize that continued litigation, including any appeals, would be protracted, expensive, uncertain, and contrary to their respective best interests. Accordingly the Parties believe that this Agreement is the most efficient and beneficial method to resolve the claims actually asserted and those that could have been asserted therein;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants in the Litigation, and the impact of this Agreement on the Class Members and, based upon an analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of all Class Members. Defendants and Defendants' Counsel also agree that the Settlement is fair, reasonable, and adequate in light of all known facts and circumstances.

WHEREAS, this Agreement is intended to, and does, effectuate the full, final and complete resolution of all allegations and claims that were asserted, or could have been asserted, in the Litigation, including any appeals, by Plaintiffs and the Class Members that Plaintiffs seek to represent.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

- 2-

1.      **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1     **Agreement.** "Agreement" means this Settlement Agreement and Release, including all exhibits hereto.

1.2     **Acceptance Period.** "Acceptance Period" means the 120 days that a Class Member has to cash a Settlement Check.

1.3     **Bar Date.** "Bar Date" means the date ninety (90) days after the Initial Mailing Deadline.

1.4     **Claim Form.** "Claim Form" means a form that satisfies the requirements set forth in Section 2.5(D), below.

1.5     **Claim Period.** "Claim Period" means the period for filing claims, which shall be from the date of the initial mailing of the Notice until ninety (90) days following the date of the initial mailing of the Notice.

1.6     **Class Counsel.** "Class Counsel" shall mean Pelton & Associates PC, by Brent E. Pelton, Esq. and Taylor B. Graham, Esq., 111 Broadway, Suite 1503, New York, NY 10006, (212) 385-9700 and Samuel & Stein, by David Stein, Esq. and David Nieporent, Esq., 38 West 32nd Street, Suite 1110, New York, NY 10001.

1.7     **Class; Class Members.** "Class" shall mean the Named Plaintiffs, the Opt-In Plaintiffs and all current and former employees who worked for Nevada Diner, Inc. or Diskal, Inc. as non-management employees at any time from March 5, 2008 through April 15, 2015. A member of the Class is a "Class Member."

1.8     **Court.** "Court" means the United States District Court for the Eastern District of New York, the Honorable Roanne L. Mann, presiding.

1.9     **Days**. "Days" means calendar days.

1.10    **Defendants' Counsel.** "Defendants' Counsel" shall mean Littler Mendelson P.C., by Andrew P. Marks, Esq. and Sarah E. Moss, Esq., 900 Third Avenue, New York, NY 10022.

1.11    **Effective Date.** "Effective Date" of the settlement shall mean the next business day following the date the Court has entered an Order Granting Final Approval of the Settlement as requested in the Motion for Final Approval (as defined in Section 2.7), and ruled on the motion for attorneys' fees and reasonable costs pursuant to Section 3.2 and service payments pursuant to Section 3.3 and the judgment and rulings on such motions have become Final. "Final" means that (A) the time periods to seek rehearing, reconsideration, appellate review and/or extension of time for seeking appellate review have expired and there have been no such actions or (B) if rehearing, reconsideration, and/or appellate review have been sought, 30 days after any and all avenues of rehearing, reconsideration, appellate review and/or extension of time have been exhausted and no further rehearing, reconsideration, appellate review, and/or extension of time is permitted, and the time for seeking such things has expired, and the judgment has not been modified, amended, or reversed in any way.

**1.12    Fairness Hearing.**  "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**1.13    Final Approval Order**.  "Final Approval Order" means the Order entered by the Court after the Fairness Hearing.

**1.14    Litigation.**  "Litigation" means the above-captioned case, *Kim v. Nevada Diner, Inc.,* E.D.N.Y. Case No. 14 Civ. 1484 (MKB)(RLM), as well as the Lopic Action, *Lopic et al. v. Diskal, Inc., et al*., E.D.N.Y. Case No. 14 Civ. 2822.(MKB)(RLM).

**1.15    Named Plaintiffs.**    "Named Plaintiffs" means Andrew Kim, Gregorio Lopic, Jorge Sanchez, Mauricio Vazquez, German Jimenez, Juan Hernandez and Edward Cortes.

**1.16    Net Settlement Fund.**  "Net Settlement Fund" shall mean the Total Settlement Amount less the amount of for Court-approved Service Awards for the Named Plaintiffs (as described in Section 3.3), attorneys' fees and costs approved by the Court (as described in Section 3.2), and court-approved administration costs for the Settlement Administrator (as described in Section 2.2(C)).

**1.17    New York State Class.**    "New York State Class" refers to the class certification under Fed. R. Civ. P. 23, for settlement purposes only, of the New York Labor Law and Tax Reporting Claims asserted in the Litigation.

**1.18    Notice or Notices.**  "Notice" or "Notices" means the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing to be issued to Class Members.

**1.19    Opt-In Plaintiffs.**    "Opt-In Plaintiffs" means the individuals who have joined this Litigation by filing a Consent to Become a Party Plaintiff form.

**1.20    Participating Class Members.**    "Participating Class Members" are all Class Members who do not submit a valid Opt-out Statement as provided in 2.5 herein and who submit a valid Claim Form, as provided in Section 2.4(E) herein.

**1.21    Preliminary Approval Order.**    "Preliminary Approval Order" means the Order that, *inter alia*: (i) conditionally certifies a Class solely for purposes of determining whether the terms of the settlement are fair; (ii) preliminarily approves the terms and conditions of this Agreement; (iii) directs the manner and timing of providing Notices to the Class Members; and (iv) sets the time period for opt-outs and objections.

**1.22    Releasees.**    "Releasees" means Defendants Nevada Diner, Inc., Diskal, Inc., Dimitrios Kaloidis and Paul P. Kerantzas and each and all of its and their affiliates, parents, subsidiaries, predecessors, successors, divisions, insurers, joint ventures and assigns, and each of these individuals' and entities' past or present owners, directors, officers, managers, employees, partners, members, principals, representatives, agents, servants, insurers, co-insurers, re-insurers, shareholders, attorneys, personal or legal representatives and any other successor, assign or legal representative of any of the Defendants.

**1.23    Released Federal Law Claims.**  "Released Federal Law Claims" for a Class Member shall collectively mean any and all claims, debts, obligations, guarantees, costs, expenses, attorneys' fees, demands, actions, rights, causes of action, and liabilities against any Releasees, arising under Federal law, relating to the payment of any wages and/or

compensation of any kind, and expenses including the Fair Labor Standards Act of 1938 ("FLSA"), whether known or unknown, and whether anticipated or unanticipated, by a Participating Settlement Class Member, that arose or accrued from March 5, 2011 to June 12, 2015. This includes (under such claims) requests for any type of relief, including without limitation claims for damages, any unpaid wages or compensation of any kind, tips, gratuities, adjustments to compensation, unreimbursed expenses, waiting-time penalties, rounding errors, or other penalties or payments for overtime, missed meal periods, and missed rest breaks; whether for attorneys' fees, declaratory relief or injunctive relief; whether sounding in retaliation, statute, contract, tort, or otherwise; as well as the Tax Reporting Claims as defined below; and which were or which could have been asserted in this Lawsuit against any Releasees.

1.24   **Released State Law Claims.**   "Released State Law Claims" for a Class Member shall collectively mean any and all claims, debts, obligations, guarantees, costs, expenses, attorneys' fees, demands, actions, rights, causes of action, and liabilities against any Releasees, whether known or unknown, and whether anticipated or unanticipated, by all Class Members who do not opt-out, that arose or accrued from March 5, 2008 to June 12, 2015 relating to the payment of any wages and/or compensation of any kind, unpaid spread-of-hours pay, tips, gratuities, adjustments to compensation, alleged deductions from compensation, unreimbursed expenses, uniform maintenance violations, waiting-time penalties, rounding errors, or other penalties or payments for overtime, missed meal periods, and missed rest breaks; whether for attorneys' fees, declaratory relief or injunctive relief; whether sounding in contract, tort, or otherwise. This release includes any and all claims which were or which could have been asserted in the Complaint that arose under the laws of New York, including for unjust enrichment, misrepresentation, fraud, any failure to pay any type of overtime compensation, spread-of-hours pay or minimum wage to any Participating Settlement Class Member, any failure to distribute tips, any failure to pay timely any wages or compensation of any kind, including payment of wages at termination, any alleged deduction from wages and/or allegedly illegal payments by separate transaction, any failure to provide or pay for meal breaks, and/or rest periods, claims arising from rounding error, claims for retaliation, the Tax Reporting Claims, all claims for penalties, payments or additional damages, including without limitation waiting time penalties. The Released State Law Claims include but are not limited to any claims arising under New York Labor Law ("NYLL") §§ 160 *et seq.*, 190 *et seq.* (including, but not limited to § 191, § 193 and § 198), 215, 650, 12 N.Y.C.R.R. §§ 146-1.1. *et seq.* (including, but not limited to, § 146-2.1 *et seq.* and § 146-3.1 *et seq.*) and any applicable Wage Order, and any and all other claims under any similar statute, order, rule or regulation which were or which could have been asserted in this Lawsuit.

1.25   **Service Awards.** "Service Awards" refers to the request by the Named Plaintiffs for Service Awards in the amount of Three Thousand Five Hundred Dollars ($3,500.00) per person, to be paid from the Settlement Amount.

1.26   **Settlement Administrator.** "Settlement Administrator" shall mean a third-party settlement administration company to be agreed upon by the parties. In its motion for Preliminary Approval, Plaintiffs will seek to have a third-party settlement administration company retained as the class action Settlement Administrator in order to establish and maintain the Qualified Settlement Fund, to issue Settlement Checks to Participating Class Members and to deduct, withhold, remit and report taxes or other payments to appropriate governmental authorities or agencies.

1.27    **Settlement Amount.**  "Settlement Amount" means an amount no greater than Three Million Two Hundred Thousand Dollars ($3,200,000.00), as further described in Section 3.1(A).

1.28    **Settlement Checks.**    "Settlement Checks" means check(s) issued by the Settlement Administrator to Participating Class Members for the Class Members' share of the Net Settlement Fund as allocated pursuant to the settlement allocation agreed to by the Parties.

1.29    **Tax Reporting Claims.**  "Tax Reporting Claims" means claims asserted in the Eleventh Cause of Action in the Third Amended Complaint arising under 26 U.S.C. § 7434.

2.      **INITIAL PROCEDURAL ISSUES**

2.1     **Binding and Irrevocable Agreement.**   This Agreement is a binding and irrevocable agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2     **Retention and Responsibilities of Settlement Administrator.**

(A)     Duties.  The Settlement Administrator will be responsible for claims administration, with duties as follows: (i) receiving settlement funds from Defendants and setting up the Qualified Settlement Fund for issuing settlement payments; preparing, printing and disseminating to potential Class Members the Notices; (ii) mailing Settlement Checks and Service Awards (as applicable) to Class Members consistent with this Agreement and the Final Approval Order; (iii) retaining copies of original copies of the signed, endorsed, deposited, cashed and/or negotiated settlement checks; (iv) notifying Defendants' Counsel and Class Counsel of all undeliverable and un-cashed Settlement Checks after 120 days from the date of mailing; (v) issuing a check to Defendants for the amount of any Reversion to Defendants; (vi) confirming in writing to Defendants' Counsel and Class Counsel its completion of the administration of the settlement; and (vii) such other duties described in this Agreement.

(B)     The Settlement Administrator shall be required to agree in writing to treat information it receives or generates as part of the claims administration process as confidential and to use such information solely for purposes of claims administration. Defendants' Counsel and Class Counsel will have equal access to the Settlement Administrator, as well as all information in possession of the Settlement Administrator related to the administration of the settlement, except that the Settlement Administrator shall not provide Class Counsel with access to any social security numbers provided to or obtained by the Settlement Administrator in connection with its duties under the terms of this Agreement.  Neither party shall have the authority or ability to expand the duties, responsibilities or authority of the Settlement Administrator beyond those described in this Agreement.

(C)     All fees and expenses of the Settlement Administrator shall be paid out of the Total Settlement Amount, as defined in Section 3.1.  The Settlement Administrator shall be required to agree to a reasonable cap for fees and expenses for claims administration work, and such cap shall provide the basis for the reserve described in Section 3.1. Any fees and expenses in excess of the cap shall not be paid to the Settlement Administrator unless the Settlement Administrator files a declaration with the Court

explaining the basis for the additional fees and costs and receives approval by the Court for such payments.  In no event shall the Settlement Administrator seek additional fees and expenses after the Fairness Hearing.

**2.3** **Preliminary Approval Motion.**

(A)   Following execution of this Agreement, Class Counsel will submit to Defendants' Counsel a draft Motion for Preliminary Approval and allow Defendants' Counsel an opportunity to review and comment on the Motion to ensure it is consistent with this Agreement.

(B)   With the Preliminary Approval Motion, Class Counsel will submit to the Court, among other things: (1) a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing; (2) the proposed Claim Form; and (3) the proposed Preliminary Approval Order certifying, for purposes of settlement only, the New York State Class under Fed. R. Civ. P. 23, appointing Pelton & Associates PC and Samuel & Stein as Class Counsel, appointing an agreed-upon third-party Settlement Administrator and preliminarily approving the Settlement.  Class Counsel will allow Defendants an opportunity to review the terms of the proposed Preliminary Approval Motion, Notices, Claim Form and Preliminary Approval Order.  Defendants' Counsel will review these documents to ensure that they are consistent with this Agreement and the intended Settlement, and if they are not, Class Counsel will revise them as reasonably requested by Defendants' Counsel to make them consistent.

(C)   In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Final Judgment" that will, among other things: (1) approve the Settlement as fair, adequate and reasonable; (2) incorporate the terms of the release appearing in Sections 2.8(D) and 4.1(A) and (B); (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs and expenses; (5) approve payment of the Settlement Administrator's fees from the Qualified Settlement Fund; and (6) award Service Awards to the Named Plaintiffs.

(D)   If the Court does not grant the Preliminary Approval Motion and enter an order preliminarily approving the settlement, the parties jointly agree to negotiate in good faith over an alternative settlement and to seek reconsideration or Court approval of a renegotiated agreement or appeal of the ruling.  In the event such efforts are unsuccessful, the Litigation will resume as if no settlement had been attempted. Defendants retain the right to contest whether the Litigation should be maintained as a class action and/or collective action and to contest the merits of the claims being asserted in the Litigation.

(E)   The parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

**2.4** **Mailing of Notice and Claim Forms to Class Members**

(A)   Within ten calendar (10) days of the entry of the Preliminary Approval Order, Defendants will use their best efforts to provide to Class Counsel a list, in Excel format, of the names and last known addresses of all Class Members (the "Initial

Class List"). Defendants will supplement the Initial Class List with additional names and last known addresses, if any, located after provision of the position(s) held, restaurant location(s) worked in, dates of employment, telephone number(s), and whether or not the Class Member has already entered into a Settlement Agreement (the "Final Class List") with Defendants within twenty (20) days of the date Defendants provide the Initial Class List.

(B)     Promptly following the Court's entry of the Preliminary Approval Order, Class Counsel shall prepare final versions of the Notice and Claim Form, incorporating into the documents the relevant dates and deadlines set forth in the Court's Order.

(C)     Within fifteen (15) calendar days of Defendants' delivery of the Final Class List referenced in Section 2.4(A), Settlement Administrator will mail to all Class Members, via First Class United States Mail, postage prepaid, and keep a written record of the date(s) of such mailing, final versions of the Notice and Claim Form referenced in Section 2.4(B).  The date of such mailing shall be referred to as the "Initial Mailing Deadline." Defendants will also post the Notice and Claim Form in both Diners in locations readily accessible to employees within this same fifteen (15) day time frame.

(D)     Class Counsel will take all reasonable steps to obtain the correct address of any Class Members for whom the documents referenced in Section 2.4(B) are returned by the post office as undeliverable.  Class Counsel will notify Defendants' Counsel of any such materials sent to a Class Member that are returned as undeliverable after the first mailing, as well as any such materials returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.  For any Class Member whose mailing is returned as undeliverable for which Class Counsel are unable to locate an alternative address, Defendants shall inform Class Counsel of any known alternate addresses or other contact information for attempted re-mailings.

(E)     In order to be a "Valid Claim Form," the Claim Form must be completed as instructed on the Claim Form, signed, dated, and returned to Class Counsel within the Claim Period.

(F)     Within five (5) days of receipt of an unsigned or incomplete Claim Form during the Claim Period, Settlement Administrator shall notify in writing the Class Member who returned such Claim Form of its deficiency and provide such individual with a copy of his or her original Claim Form or another Claim Form that the individual may use to cure the deficiency within the later of the Claim Period or ten (10) days after being notified of the deficiency. The notice of deficiency and substitute Claim Form required hereunder shall be provided to the individual via first class mail, email or such other manner selected by Class Counsel. If not properly completed and returned to Settlement Administrator within the Claim Period or such later ten (10) day period (if applicable), the Claim Form will be null and it will not be considered or become a Valid Claim Form.

(G)     The Settlement Administrator shall mail a follow-up Notice and Claim Forms to prospective Class Members who do not submit a Valid Claim Form to the Settlement Administrator in response to the initial Notice and Claim Form sent to them, specifically as follows: the "Second Notice" and Claim Form approximately sixty

(60) days after the Initial Mailing Date informing such Class Members of their right to receive money pursuant to the Settlement only by submitting a completed Claim Form by the Bar Date.

(H)     Class Members who do not timely return a Valid Claim Form to Class Counsel by the Bar Date shall be deemed to have waived any right to receive a payment in conjunction with the Settlement.

(I)     Class Members who return a Valid Claim Form to Class Counsel in compliance with the preceding subsections of this Section 2.4 shall be issued a Settlement Check as set forth in Section 3.1 below and will release Defendants from all Released Federal Law Claims and Released State Law Claims (as defined in Sections 1.23 & 1.24, respectively).

(J)     Should the Agreement not be finally approved by a Final Approval Order, the Release portion of the Claim Forms shall be void.

## 2.5     Class Member Opt-outs.

(A)     Any Class Member may request exclusion by "opting out."  To do so, a Class Member must submit a written and signed request for exclusion to Class Counsel.

(B)     To be effective, a Class Member's Opt-Out Statement must include the Class Member's name, address and telephone number(s) and state: "I opt out of the Georgia and Nevada Diner wage and hour Settlement and I understand that I will not receive any payment or benefit from the Settlement" or language to that effect. The Opt-Out Statement must be sent to Settlement Administrator via First-Class United States mail, postage prepaid and postmarked no later than a date to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing.  This date will be 90 calendar days after the Initial Mailing Deadline, and the period of time between the Initial Mailing Deadline and this date shall be referred to as the "Opt-Out Period."

(C)     Class Counsel shall stamp the postmark date on the original of each Opt-Out Statement it receives.  Class Counsel shall serve copies of each Opt-out Statement on Defendants' Counsel not later than five (5) days after receipt thereof.  Additionally, within 5 calendar days after the end of the Opt-Out Period, Class Counsel shall send to Defendants' counsel a final list of all persons who timely submitted Opt-Out Statements and stamped copies of any Opt-Out Statements received.  Class Counsel shall also, in connection with their Motion for Final Approval, file on ECF copies of any Opt-out Statements, with any address and social security number information redacted from them.  Defendants' Counsel shall be given advance notice and the opportunity to review and comment on such filing.

(D)     Defendants shall have the option, in the exercise of their sole discretion, to nullify the settlement and this Agreement by giving notice, in writing, to Class Counsel and the Court at any time prior to the Fairness Hearing, if Class Members whose potential payment exceed 15% of the total settlement payout submit an Opt-out Statement pursuant to this Agreement. In the event of such nullification: (i) the Litigation will proceed as if no settlement had been attempted and no party may use the fact that the Parties agreed to settle this case as evidence of Defendant's liability in this lawsuit or

the lack thereof and (ii) Defendants retain the right to contest whether the Litigation should proceed as a class or collective action and to contest the merits of the claims being asserted in the Litigation.

(E)     Any Class Member who does not timely opt out will be bound by the release set forth in Section 4.1.

## 2.6     Objections to Settlement.

(A)     Any Class Members who do not timely submit an Opt-out Statement, but who wish to present objections to the proposed settlement and/or this Agreement at the Fairness Hearing must first do so in writing.  To be considered, such written statement must be mailed to Class Counsel via First-Class United States Mail, postage prepaid, and postmarked no later than ninety (90) calendar days after the Initial Mailing Deadline. Class Counsel shall stamp the postmark date on the original of any such objection. The written statement must include all reasons for the objection and any reasons not included in the statement will not be considered.  The written statement must also include the name, address, and telephone numbers for the Class Member making the objection.  Class Counsel will send copies of each objection to Defendants' Counsel by email no later than three (3) days after receipt thereof.  Class Counsel will also file copies of the originals of any and all objections with the Court in connection with their Motion for Final Approval.

(B)     An individual who files written objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections.  An Objector may withdraw his or her objections at any time.  No Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.  A Class Member who has submitted an Opt-out Statement may not submit objections to the settlement.

(C)     The parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

## 2.7     Fairness Hearing and Motion for Final Approval and Dismissal.

(A)     Not later than fourteen (14) calendar days prior to the Fairness Hearing, Class Counsel will submit to the Court a memorandum of law and any necessary affidavits, objections and opt-out information in support of a Motion for Final Approval of Class Settlement ("Final Approval Motion"). While it is anticipated that such Final Approval Motion will be submitted with the consent of the Parties, Defendants' counsel will have ten (10) days to respond thereto and Class Counsel may file a reply no later than two (2) days before the Fairness Hearing.

(B)     At the Fairness Hearing, the Parties will request that the Court, among other things: (1) certify the Class for purposes of the Settlement; (2) approve the Settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the Settlement; (3) approve the procedure for Defendants to

pay the Settlement Amount and to issue Settlement Checks to Participating Class Members in the amounts set forth pursuant to the agreed-upon Settlement allocation; (4) order the attorneys' fees and costs and expenses to be paid to Class Counsel from the Settlement Amount; (5) order that Service Awards in the amount of Three Thousand Five Hundred Dollars ($3,500) be paid to each of the Named Plaintiffs; (6) order that the Settlement Administrator be paid its fee from the Settlement Amount and subject to prior approval by Class Counsel and Defendants' Counsel, based upon reasonable time, costs and expenses actually incurred; (7) order the pro-rata redistribution to Participating Class Members of any funds under $2 million not claimed by Class Members during the Claim Period; (8) order the amount of any Settlement Checks (or Replacement Checks, if any) issued to Participating Class Members which remain uncashed as of the end of the Settlement Payment Period to be redistributed pro-rata to Participating Class Members if economically feasible to do so, otherwise such amount to remain with Defendants (the "Reversion"); (9) order the dismissal with prejudice of all claims asserted in the Litigation  and the Released Federal Law Claims and Released State Law Claims as to the Participating Class Members (as defined in Sections 1.23 and 1.24, respectively), subject only to an appropriate application for relief from the dismissal under Fed. R. Civ. P. 60(b)(1), or 60(d); (10) order entry of Judgment of Dismissal in accordance with this Agreement; and (11) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby, including matters pertaining to the Reversion.

(C)     If the Court fails to enter a Final Approval Order and Judgment or if the Judgment does not become Final, the Litigation will continue unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying a Final Approval Order; or (2) attempt to renegotiate a Settlement of the Litigation and seek Court approval of the renegotiated settlement.

(D)     In the event that the Court fails to enter a Final Approval Order and Judgment and Litigation continues, (i) the Class, which was certified under Rule 23(b)(3) of the Federal Rules of Civil Procedure and 29 U.S.C. § 216(b) for purposes of settlement, shall be decertified, and Defendants shall retain the right to contest whether this Litigation should be maintained as a class action or collective action and to contest the merits of the claims being asserted in this action and (ii) the Court will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Settlement Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Administrator in mailing the Notice; and (iii) the Parties will share in equal parts the fees and expenses of the Settlement Administrator.

**2.8     Settlement Checks.**

(A)     Participating Class Members will be issued a Settlement Check in accordance with the Final Approval Order.

(B)     Settlement Administrator will distribute the Settlement Checks to the Participating Class Members pursuant to the payment schedule under Section 3.1(B).

(C) Settlement Administrator will re-issue a Settlement Check to a Participating Class Member who provides a sworn statement that he or she never received or lost the original Settlement Check, provided that the sworn statement is provided to Defendants' counsel during the Acceptance Period and provided that an effective stop-payment has been placed on the previously-issued Settlement Check to ensure that the amount payable to such Participating Class Member is actually received by such Participating Class Member. The cost of stop payment shall be borne by Participating Class Member and shall be deducted from the amount included in the re-issued Settlement Check.

(D) Settlement Checks will contain and be subject to a release of the Released State Law Claims and Released Federal Law Claims (as defined in Sections 1.23 and 1.24, respectively) and consent to join this Litigation under the FLSA. Any Participating Class Member who cashes or deposits his or her Settlement Check will, by its terms, release the Released State Law Claims and Released Federal Law Claims, including but not limited to, his or her FLSA and NYLL claims, by the following language on the Settlement Check:

> "By accepting and negotiating this check, I confirm that I executed a valid Claim Form and thereby released Nevada Diner, Inc., Diskal, Inc., Dimitrios Kaloidis, and Paul P. Kerantzas from all wage and hour claims for periods of time that I worked for Defendants, as set forth in more detail in the Release that is part of the Settlement Agreement."

## 3. SETTLEMENT TERMS

### 3.1 Settlement Amount.

(A) Subject to the terms of this Agreement, Defendants agree to pay up to a gross total Settlement Amount of Three Million Two Hundred Thousand Dollars and No Cents ($3,200,000.00), which shall fully resolve and satisfy all amounts due under this Agreement, including: (1) all payments to be made to the Named Plaintiffs and Participating Class Members pursuant to this Agreement; (2) all costs and attorneys' fees approved by the Court; (3) any court-approved Service Awards; and (4) reasonable costs of settlement administration. Under no circumstances shall Defendants be required to pay more than $3,200,000, other than amounts due to cover Defendants' share of payroll taxes as described in Section 3.5(B).

(B) Defendants will pay the lesser of $3,200,000.00 or the amount claimed by the Participating Class Members, plus amounts ordered by the Court for Attorneys' Fees, Service Awards, and Settlement Administrator expenses, but in no amount less than $2,000,000.00, to the Settlement Administrator in a single lump-sum payment by the later of January 31, 2016 or five (5) days after settlement approval becomes final.

(C) The Settlement Administrator will issue Settlement Checks to the Participating Class Members in accordance with the settlement allocation set forth in Section 3.4, below, within ten (10) days of receipt of the funds from Defendants.

(D)     Participating Class Members will have one hundred and twenty (120) days from the date of mailing by the Settlement Administrator (or Class Counsel) of their Settlement Checks to cash or deposit their Settlement Checks. Class Members may request a replacement check for up to 120 days after expiration of the 120-day period. The date 120 days after the expiration of the 120-day check cashing deadline is referred to as the "Acceptance Period."

(E)     Defendants and management employees working for Defendants shall not make any statements to in any way discourage Class Members from participating in the Settlement, including but not limited to discouraging Class Members from returning claim forms or discouraging Participating Class Members from cashing or depositing Settlement Checks.

(F)     After the expiration of the Acceptance Period, all amounts constituting the Reversion, including without limitation any Settlement Checks that have not been processed to collection and other unclaimed payments and unclaimed funds after the redistribution to Participating Class Members of any unclaimed funds under $2 million, shall revert back to Defendants. In no event shall Defendants pay less than $2 million, subject only to the potential Reversion of un-cashed funds discussed in 2.7(B). The Settlement Administrator shall issue a check to Defendants from the qualified settlement fund for the amount of the Reversion after the expiration of the Acceptance Period.

**3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees and costs in the amount of Three Hundred and Fifty Thousand Dollars ($350,000.00) to be paid from the Settlement Amount.   Class Counsel understand and agree that such payment shall be Defendants' full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of individuals in connection with the Litigation, other than the settlement administration fees and expenses as specified in Paragraph 2.2(C), and that the fee and cost award by the Court shall supersede and extinguish, as of the Effective Date, any prior agreement between Class Counsel and the Named Plaintiffs (and/or, as the case may be, the Opt-In Plaintiffs or other Class Members) concerning attorneys' fees and costs associated with the Litigation.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

**3.3     Service Awards.**

(A)     In return for services rendered to the Class Members in initiating and affirmatively participating in this Lawsuit and for serving as representatives for the class in connection with this Lawsuit, at the Fairness Hearing, the Named Plaintiffs and will

apply to the Court to receive $3,500.00 each as a service award (the "Service Award") from the Settlement Amount.

(B)     The Service Awards approved by the Court shall be paid from the Settlement Amount.  The Service Awards and the requirements for obtaining such payments set forth in this section are separate and apart from, and in addition to, other recovery which the Named Plaintiffs are entitled, and other requirements for obtaining such recovery under other provisions of this Agreement.

(C)     The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval and Judgment.

**3.4     Allocation to Class Members.**

(A)     A Class Member who does not opt out pursuant to Section 2.5 and who submits a Valid Claim Form within the Claim Period will be deemed eligible for a payment hereunder and will be a "Participating Class Member."

(B)     The allocation to Participating Class Members for Settlement Checks will be made from the Settlement Amount after deductions for Court-approved attorneys' fees and costs and expenses for Class Counsel and all other amounts provided in this Agreement.

(C)     The Settlement Administrator shall calculate a "Net Settlement Fund," which shall equal the Total Settlement Amount less the amount of Court-approved Service Awards for the Named Plaintiffs (as described in Section 3.3), attorneys' fees and costs approved by the Court (as described in Section 3.2), and court-approved administration costs for the Settlement Administrator (as described in Section 2.2(C)).

(D)     If the amount owed to the Participating Class Members, pursuant to the allocation formula described in subparagraphs 1 through 5 below, is greater than the Net Settlement Fund, then the Net Settlement Fund shall be divided pro rata among all Participating Class Members according to a confidential allocation using each Class Member's actual alleged damages for unpaid minimum wages, unpaid overtime premiums, and unpaid spread of hours premiums from and after March 6, 2008 until June 12, 2015, as described in subparagraphs 1-5 below.

If the amount owed to the Participating Class Members, pursuant to the allocation formula described in subparagraphs 1 through 5 below, is less than the Net Settlement Fund but greater than $2,000,000.00, then the Participating Class Members shall each be entitled to the amounts allocated to them pursuant to that formula.

If the amount owed to the Participating Class Members, pursuant to the allocations formula described in subparagraphs 1 through 5 below, is less than $2,000,000.00, then $2,000,000.00 shall be divided pro-rata among all Participating Class Members pursuant to that formula.

1.      For Class Members for whom Defendants maintain employment records, their allocation will be based on the hours worked and wages paid pursuant to such records. Specifically, the damages will be calculated as follows:

a.      <u>For tipped employees</u>: Defendants will receive a credit of 40% against the NYLL tip credit. For example, if a Class Member was paid at the tip-credit minimum wage of $5.00 per hour during a time period when the tip-credit was $2.25 per hour, that Class   Member will be awarded the difference between the $5.00 per hour they received and the full minimum wage ($7.25) minus $0.90 ($2.25 * 40%), which equals $1.35 per hour. Similarly, if the Class  Member was paid $2.00 per hour, they will receive $4.35 per hour during the period when the minimum wage rate was $7.25.

b.      <u>For all employees</u>: Spread of Hours premiums damages will be calculated according to the hours worked by the Class Member on a weekly basis utilizing the minimum wage in effect at the time the Class Member worked. Spread of Hours will be calculated for all Class Members after January 1, 2011 but  only for Class Members who earned $8.00 per hour or less for the years between March 6, 2008 and December 31, 2010. The damages will be calculated in accordance with the following formula:

- 1 hour of minimum wage for each week Class Member worked 46-50 hours

- 2 hours of minimum wage for each week Class Member worked 51-55 hours

- 3 hours of minimum wage for each week Class Member worked 56-60 hours

- 4 hours of minimum wage for each week Class Member worked 61-65 hours

- 5 hours of minimum wage for each week Class Member worked over 65 hours

2.      For Class Members for whom Defendants do not maintain employment records for the entire time period they worked for Defendants (i.e., the Class Member worked both during and before the period for which Defendants maintain records), their allocation for the time period for which there are no records will be based on average damages calculated for the weeks in which there are records. For example, if a Class Member's damages are calculated to be $100.00 per week based on the Defendants' records, that Class Member will be allocated $100.00 per week for each week after March 6, 2008 that the Class Member worked for Defendants for which Defendants do not maintain records. To determine the Class Members' start date with Defendants, the start date indicated by the Class Member on their Claim Form will control, subject to verification by the Class Committee (discussed in Section 3.4(F), below).

3.      For Class Members for whom Defendants do not maintain any employment records (i.e., the Class Member worked for Defendants prior to 2010), their allocation will be based on the following formula:

Defendants will determine the average weekly damages for a Class Member who worked in their position and who was paid "off-the-books" during the 2010 calendar year for which Defendants maintain records. The Class Member will be allocated that

average weekly damages for each week the Class Member worked for Defendants. For example, if a Class Member was a grill man/cook, and it is determined that the average weekly damages for grill men/cooks paid "off-the-books" during 2010 was $100.00 per week, the Class Member will be allocated $100.00 per week for each week that he/she worked for Defendants from and after March 6, 2008

To determine the Class Members' dates of employment with Defendants, the start date and end date indicated by the Class Member on his/her Claim Form will control, subject to verification by the Class Committee.

4.      For Class Members who have previously entered into individual settlement agreements with Defendants ("Individual Settlers"), for the period covered by their settlement agreements the Individual Settler is not entitled to damages for unpaid minimum wage or overtime premiums but only spread of hours damages pursuant to the formula set forth in 3.4(D)(1)(b). For the period not covered by the individual settlement agreements, if any, the Individual Settler's damages will be calculated using the same framework as for the other Class Members as set forth above depending on whether or not there are records for the time period not covered by the individual settlement agreement.

5.      Liquidated damages will also be included as a portion of each Class Member's damages calculation. In calculating the liquidated damages, each Class Member will be allocated 100% liquidated damages under the FLSA on their unpaid minimum wage and overtime damages during the FLSA period, plus 100% liquidated damages under the NYLL for their spread of hours damages from 2011 to present. Prior to 2011, Class Members will be allocated 25% liquidated damages on their NYLL claims including unpaid minimum wage, overtime, and spread of hours, if applicable.

(E)   Defendants are to perform the initial damages calculation pursuant to the above framework and formulas and provide such calculations and the underlying records used to calculate such damages to Class Counsel for review and assessment prior to the providing the calculations to the Settlement Administrator for processing the Settlement Checks. In the event that Class Counsel disagrees with the damages calculation Defendants provide for a Class Member, Class Counsel shall meet and confer with Defendants to discuss the disagreement. If the Parties are unable to resolve the disagreement in damages calculations, the Parties will submit the disagreement and the basis thereof in a joint letter with each party's respective positions to Magistrate Judge Mann for resolution.

(F)   A Class Committee consisting of long-term employees of Georgia Diner and Nevada Diner, including at a minimum a kitchen employee, wait staff employee, and management employee, will be formed for the purpose of confirming the dates of employment, if any, for those Class Members for whom Defendants do not maintain complete records of their employment with Defendants (as described in 3.4(D)(2) & (3)). While the start date and end date indicated by the Class Member on his/her Claim Form will control, the Class Committee can dispute these dates if the Class Committee is able to come to a consensus as to a more precise start date and/or end date. If the Class Committee determines a more precise start date and/or end date for a Class Member, the Class Member must be informed of the disputed date and be provided an

opportunity to provide proof and/or an explanation as to the accuracy of dates indicated on the Claim Form. The Class Committee will review the proof and/or explanation and make a final determination as to the applicable date(s) which they will inform the Class Member via letter. In the event the Class Member is not satisfied with the Class Committee's determination as to his/her date(s) of employment, the Class Member can write to Class Counsel with their dispute of the Class Committee's determination. Class Counsel will present all written disputes from Class Members relating to the determinations of the Class Committee to Magistrate Judge Mann for resolution and final determination by Magistrate Judge Mann which dates should control for purposes of calculating the Class Member's damages.

**3.5     Taxability of Payments**

(A)     For tax purposes, 50% of the respective Settlement Payments made to the respective payees (collectively, "Employees") pursuant to Section 3.4 shall be treated as back wages, and 50% of such payments shall be treated as liquidated damages and interest.

(B)     The Settlement Administrator, as administrator of the Qualified Settlement Fund ("QSF") making such payments, shall report that portion of the respective Settlement Payments treated as wages to the respective Employees and to the United States Internal Revenue Service and to other appropriate taxing authorities ("Taxing Authority" or "Taxing Authorities") on Forms W-2.  Such portions of the Settlement Payments treated as wages shall be subject to applicable employment taxes and withholding taxes, as determined by the Settlement Administrator as administrator of the QSF making such payments.  Defendants shall bear the cost of the employer's share of taxes for such payments, which share of taxes will not come out of the Total Settlement Amount.  In the event that it is subsequently determined by any Taxing Authority that any Employee owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that liability for such taxes rests exclusively with that Employee and that Defendants will not be responsible for the payment of such taxes, including any interest and penalties.  The Settlement Administrator, as administrator of the QSF, shall report that portion of the Settlement Payments treated as liquidated damages and interest pursuant to this Section to the respective Employees and Taxing Authorities, to the extent required by law, under the Employees' names and federal taxpayer identification numbers, if any, on Forms 1099, and such payments shall be paid without deductions for taxes and withholdings, except as required by law, as determined by the Settlement Administrator as administrator of the QSF making such payments.

(C)     The Settlement Administrator, as administrator of the QSF, shall report to the respective payees and to the Taxing Authorities on a Form 1099 any Service Awards made pursuant to Section 3.3, and such payments shall be paid without deductions for taxes and withholdings, except as required by law, as determined by the Settlement Administrator as administrator of the QSF making such payments.

(D)     The Settlement Administrator, as administrator of the QSF, shall report the fees and costs paid to Class Counsel pursuant to Section 3.2 to Class Counsel (and to the Taxing Authorities) on a Form 1099, under Class Counsel's federal taxpayer identification number.  Payment of such fees and costs to Class Counsel shall be made without deductions for taxes and withholdings, except as required by law, as

determined by the Settlement Administrator as administrator of the QSF making such payments.

(E)     The Defendant shall have no liability or responsibility whatsoever for taxes of the QSF, any Class Member, Class Counsel, or any other person or the filing of any tax returns, information reports or other documents with the Internal Revenue Service or any other taxing authority with respect thereto. Employees will be solely responsible for all taxes, interest and penalties owed by the Employees with respect to any payment received pursuant to this Agreement. Employees will indemnify, defend, and hold Defendants and the Settlement Administrator harmless from and against any and all taxes and interest as a result of an Employee's failure to timely pay such taxes. Named Plaintiffs, on behalf of the Class, acknowledge and agree that Defendants have provided no advice as to the taxability of the payments received pursuant to this Agreement.

(F)     For tax purposes:

(1)     The Defendants shall be the "transferor" within the meaning of Treasury Regulation § 1.468B-1(d)(1) to the QSF with respect to the amounts transferred;

(2)     The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Treasury Regulation § 1.468B-2(k)(3), responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Treasury Regulation § 1.468B-2(1)(2) or any other applicable law on or with respect to the QSF, and in accordance with Section 3.6(B) of this Agreement; and

(3)     The Defendants and the Settlement Administrator shall reasonably cooperate in providing any statements or making any elections or filings necessary or required by applicable law for satisfying the requirements for qualification as a QSF, including any relation-back election within the meaning of Treasury Regulation § 1.468B-1(j).

**3.6     Schedule for Transfer and Plan of Distribution**

(A)     Within ten (10) days after entry of the Final Approval Order, the Settlement Administrator shall provide to Class Counsel and Defendants' Counsel a proposed plan of distribution of the Total Settlement Amount, containing the names of and proposed distribution to Participating Class Members ("Plan of Distribution"). At the same time, the Settlement Administrator shall also provide an itemized list of its costs and expenses and all other amounts to be deducted from the Total Settlement Amount, and the Settlement Administrator shall also specify the amount of payroll taxes due with respect to the Settlement Payments to Participating Class Members. Each Party shall have seven (7) days from receipt of the Plan of Distribution to serve the other Party and the Settlement Administrator with any corrections to the Plan of Distribution, or to comment on the administrative costs and expenses or other

deductions.  The Settlement Administrator shall make any changes to the Plan of Distribution mutually agreed upon by the Parties in writing and then serve the final Plan of Distribution within seven (7) days of receiving the last of such corrections.

(B)     If the Parties disagree over the Plan of Distribution, they will submit any disagreement to the Court for resolution.  Any dispute over administrative costs and expenses shall also be submitted to the Court.

(C)     Defendants shall cause the Total Settlement Amount to be placed into a Qualified Settlement Fund ("QSF") within the meaning of Treasury Regulation § 1.468B-1, *et seq.* on or before January 31, 2016 or within five (5) days of the Effective Date, whichever is later.

(D)     Within ten (10) calendar days after receipt of the Total Settlement Amount from Defendants, or the date on which the Court resolves any disputes under Section 3.6(B), whichever is later, the Settlement Administrator will distribute the funds in the QSF as of such date ("QSF Balance") by making the following payments:

   (1)     Paying each Participating Class Member his or her Settlement Payment as described in Section 3.4;

   (2)     Paying Named Plaintiffs their Service Awards as described in Section 3.3; and

   (3)     Paying Class Counsel their Court-approved attorneys' fees and costs as described in Section 3.2.

(E)     In connection with the foregoing, the Settlement Administrator will also timely mail all associated tax forms described in Section 3.5.

## 4.   RELEASE

### 4.1   Release of Claims.

(A)     By operation of the entry of the Final Approval Order and Judgment of Dismissal, and except as to such rights or claims as may be created by this Agreement, each individual Class Member who does not timely opt-out pursuant to Section 2.5 of this Agreement, whether or not such Class Member completes and/or submits a Claim Form, forever and fully releases Defendants Nevada Diner, Inc. and Diskal, Inc., and the respective owners, members, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parents, subsidiaries, affiliates, benefits plans, plan fiduciaries, and /or administrators of any of them, and all persons acting by, through, under or in concert with any of  them, including without limitation Dimitrios Kaloidis and Paul P. Kerantzas, their heirs, family members, representatives, assigns and all persons acting by, through, under or in concert with him, from the Released State Law Claims, as defined in Section 1.24 of this Agreement.  Those individual Class Members who submit a completed Claim Form and/or Class Members who cash any of their Settlement Check(s) will also release Defendants from the Released Federal Law Claims, as defined in Section 1.24 of this Agreement.

- 19-

(B)     Except as provided in this Agreement, Class Counsel and the Plaintiffs, on behalf of themselves, Class Members and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants and the Released Parties, including claims for attorneys' fees or costs associated with the Litigation and/or Class Counsel's representation of any individuals in the Litigation.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals in the Litigation.   Defendants shall have no additional liability for any fees or costs associated with the Litigation.

(C)     The Named Plaintiffs agree to execute general releases in favor of the Defendants, in the form attached hereto as Exhibit A.

**4.2    Non-Admission of Liability.**  By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to the Named Plaintiffs, Class Members, or any other individual, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendants enter into this agreement to avoid further protracted litigation and to resolve and settle all disputes.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement:  (a) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on part of the Defendants or of the truth of any of the factual allegations asserted in the Litigation; (b) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding; and (c) are not, shall not deemed to be, and may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Agreement.  The Parties understand and agree that this Agreement and all exhibits hereto are settlement documents and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement.

## 5.    INTERPRETATION AND ENFORCEMENT

**5.1    Cooperation Between the Parties; Further Acts.**  The parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2    No Assignment.**  Class Counsel and the Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**5.3    Entire Agreement.**  Other than the Settlement Checks, this Agreement constitutes the entire agreement between the parties with regard to the subject matter contained herein, and all

prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.

5.4   **Binding Effect.**  This Agreement shall be binding upon the parties and, with respect to the Named Plaintiffs and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5   **Arms' Length Transaction; Materiality of Terms.**  The parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the parties in entering into this Agreement, unless otherwise expressly stated.

5.6   **Captions.**  The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7   **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.8   **Full Force and Effect.**  If any provision of this Agreement (with the exception of the release provisions) subsequently is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.9   **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10  **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.  The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

5.11  **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12**     **When Agreement Becomes Effective; Counterparts.**     This Agreement shall become effective upon the Effective Date.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all parties had signed the same instrument.

**5.13**     **Facsimile and Email Signatures.**     Any party may execute this Agreement by signing on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

*[REMAINDER OF PAGE INTENTIONALLY BLANK;*
*SIGNATURE PAGES IMMEDIATELY FOLLOW]*

**AGREED TO BY:**

**FOR PLAINTIFFS:**


_____          _____
Andrew Kim                       Date


_____          _____
Gregorio Lopic                   Date


_____          _____
Jorge Sanchez                    Date


_____          _____
Mauricio Vazquez                 Date


_____          _____
German Jimenez                   Date


_____          _____
Juan Hernandez                   Date


_____          _____
Edward Cortes                    Date

**FOR DEFENDANTS:**

_____          _____
Nevada Diner, Inc.                           Date

By_____

Its_____


_____          _____
Diskal, Inc.                               Date

By_____

Its_____


_____          _____
Dimitrios Kaloidis                       Date


_____          _____
Paul P. Kerantzas                       Date

## EXHIBIT A

## GENERAL RELEASE AND WAIVER BY THE NAMED PLAINTIFFS

Named Plaintiffs fully release and discharge Defendants and the other Released Parties from any and all claims that Named Plaintiffs now have or claim to have, or which Named Plaintiffs at any time heretofore had or claimed to have, or which Named Plaintiffs at any time hereafter may have or claim to have, arising out of or related to any act, omission, event, fact or other thing that existed or occurred from the beginning of time up through and including the date of this Agreement.  Without limiting the generality of the foregoing, and in addition to the foregoing, Named Plaintiffs specifically and expressly release to the maximum extent permitted by law any claims against Defendants and the Released Parties that existed or occurred on or before the date of this Agreement arising out of or related to violations of any federal, state, or city employment discrimination laws, including Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the federal Fair Labor Standards Act, the federal Family and Medical Leave Act; the Age Discrimination in Employment Act, the Americans With Disabilities Act, the National Labor Relations Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974 the Older Workers Benefit Protection Act, the Genetic Information Non-Discrimination Act, the Immigration Reform and Control Act, Sections 503 and 504 of the Rehabilitation Act of 1973, and the Fair Credit Reporting Act,; as well as claims arising out of or related to violations of the provisions of the New York Labor Law; state and federal wage and hour laws; the New York State Human Rights Law, the New York City Human Rights Law, breach of contract; fraud; misrepresentation; common law claims; unfair competition; unfair business practices; negligence; defamation; infliction of emotional distress; invasion of privacy; assault; battery; false imprisonment; wrongful termination; and any other state or federal law, rule, or regulation, whether statutory or pursuant to common law.

**AGREED TO BY:**

_____          _____

**Andrew Kim**                                                     Date

STATE OF _____          )

                                                                    : ss.:

COUNTY OF _____          )

       On the_____ day of _____, 2015 before me personally came Andrew Kim to me known and known to me to be the individual described in and who executed the foregoing instrument, and duly acknowledged to me that he executed the same.

_____

Notary Public

_____          _____

**Gregorio Lopic**                                              Date

STATE OF _____          )
                                                         : ss.:
COUNTY OF _____          )


On the_____ day of _____, 2015 before me personally came Gregorio Lopic to me known and known to me to be the individual described in and who executed the foregoing instrument, and duly acknowledged to me that he executed the same.


_____

Notary Public



_____          _____

**Jorge Sanchez**                                              Date

STATE OF _____          )
                                                         : ss.:
COUNTY OF _____          )


On the_____ day of _____, 2015 before me personally came Jorge Lopez to me known and known to me to be the individual described in and who executed the foregoing instrument, and duly acknowledged to me that he executed the same.


_____

Notary Public

_____          _____
**Mauricio Vazquez**                      Date

STATE OF _____          )
                                                  : ss.:
COUNTY OF _____          )

On the____ day of _____, 2015 before me personally came Mauricio Vazquez to me known and known to me to be the individual described in and who executed the foregoing instrument, and duly acknowledged to me that he executed the same.

_____
Notary Public

_____          _____
**German Jimenez**                        Date

STATE OF _____          )
                                                  : ss.:
COUNTY OF _____          )

On the____ day of _____, 2015 before me personally came German Jimenez to me known and known to me to be the individual described in and who executed the foregoing instrument, and duly acknowledged to me that he executed the same.

_____
Notary Public

**Juan Hernandez**       Date

On the_____ day of _____, 2015 before me personally came Juan Herandez to me known and known to me to be the individual described in and who executed the foregoing instrument, and duly acknowledged to me that he executed the same.

Notary Public

**Edward Cortes**       Date

On the_____ day of _____, 2015 before me personally came Edward Cortes to me known and known to me to be the individual described in and who executed the foregoing instrument, and duly acknowledged to me that he executed the same.

Notary Public