UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW KIM, GREGORIO LOPIC, JORGE SÁNCHEZ, MAURICIO VAZQUEZ, GERMÁN JIMÉNEZ, JUAN HERNANDEZ and EDWARD CORTÉS, Individually and on Behalf of All Others Similarly Situated,<br><br>**Plaintiffs,**<br><br>-against-<br><br>NEVADA DINER, INC. d/b/a FABULOUS NEVADA DINER, DISKAL, INC. d/b/a GEORGIA DINER, DIMITRIOS KALOIDIS, PAUL P. KERANTZAS, and JOHN DOE CORPS #1-10, Jointly and Severally,<br><br>**Defendants.** | 14 Civ. 01484 (RLM) |

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT AND APPROVAL OF CLASS COUNSEL'S FEES AND COSTS**

The above-captioned matter came before the Court on Plaintiffs' Motion for Final Approval of Class Settlement and Approval of Class Counsel's Fees and Costs ("Motion for Final Approval") (Dkt. No. ___).

**I.     Background and Procedural History**

1.     The parties' proposed settlement resolves all claims in the actions entitled *Kim et al. v. Nevada Diner, Inc. et al.*, Civil Action No. 14 Civ. 1484 (MKB)(RLM) and *Lopic et al. v. Diskal, Inc., et al.*, Civil Action No. 14 Civ. 2822 (MKB)(RLM), which are currently pending before this Court.

2.     The Plaintiffs in this action allege that Defendants, *inter alia*, failed to pay them the minimum wage or overtime for all hours worked in excess of forty (40) hours per week, or

spread of hours pay for shifts lasting longer than ten hours, or uniform pay, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL"). Plaintiffs further allege that Defendants failed to provide proper wage notice and wage statements, in further violation of the NYLL, and filed fraudulent information returns in violation of 26 U.S. Code § 7434.

3. On March 3, 2014, Named Plaintiff Andrew Kim commenced this action as a putative class action under Fed. R. Civ. P. 23 and as a collective action under the FLSA. On May 5, 2014, Named Plaintiffs Gregorio Lopic, Mauricio Vazquez and Juan Hernandez commenced a parallel action as a putative class action under Fed. R. Civ. P. 23 and as a collective action under the FLSA, under the docket number *Lopic et al. v. Diskal, Inc., et al.*, Civil Action No. 14 Civ. 2822 (MKB)(RLM). On July 9, 2014, a consolidated amended complaint was filed by all Named Plaintiffs.

4. The Named Plaintiffs are former non-management employees who alleged that they and all other similarly situated employees were not paid the minimum wage or overtime premiums, did not receive spread of hours pay or uniform pay, and were not provided proper wage notices and wage statements, and they sought recovery of their unpaid wages, attorneys' fees and costs, and liquidated damages.

5. Defendants Nevada Diner, Inc. d/b/a Fabulous Nevada Diner, Diskal, Inc. d/b/a Georgia Diner and Dimitrios Kaloidis filed Answers on August 6, 2014, disputing the material allegations and denying any liability in the proposed class and collective actions.

6. Plaintiffs subsequently filed a second amended complaint on November 14, 2014, asserting additional retaliation claims against defendants, and filed a third amended complaint on

2

February 18, 2015, asserting tax reporting claims against an additional defendant, Paul P. Kerantzas.

## II. Overview of Investigation and Discovery

7. Plaintiffs' counsel has interviewed dozens of current and former employees of Defendant to gather information relevant to the claims in the litigation; obtained, reviewed, and analyzed hundreds of pages of documents including but not limited to, time and payroll records; defended depositions of plaintiffs; took the deposition of the Corporate Defendants' designated 30(b)(6) representative; fielded questions from Plaintiffs and Class Members; preparing for and attending a lengthy and comprehensive settlement conference; and engaged in extensive settlement negotiations. (Pelton Decl. at ¶ 20.)

8. In addition, Plaintiffs' counsel also obtained, reviewed, and analyzed in excess of 4,000 pages of payroll documents from both Georgia Diner and Nevada Diner relating to work performed by Class Members for defendants throughout the relevant statutory period.

## III. Settlement Negotiations

9. Over the course of approximately twelve (12) months of litigation, the parties engaged in informal and formal settlement negotiations. After an agreement to exchange partial discovery with the goal of determining the scope of damages for the class members, the parties participated in an all-day mediation session with the assistance of JAMS. That mediation was unsuccessful, but the parties continued to discuss settlement. Eventually, to proceed with settlement discussions, the parties agreed to request a settlement conference before Magistrate Judge Mann to assist the parties with their negotiations. To that end, the parties prepared for and attended a settlement conference before Magistrate Judge Mann on April 22, 2015.

10. After an all-day settlement conference facilitated by Magistrate Judge Mann, the parties were able to reach an agreement on a settlement amount and other key terms of the settlement process, including payment and dissemination.

11. During the next several weeks, Plaintiffs drafted a formal settlement agreement and release and circulated it to counsel for Defendants for their comment and signatures.

12. After additional negotiations the final agreed-to terms were memorialized in a formal Settlement Agreement and Release (*see* Dkt. 106-1) (the "Settlement Agreement"), attached to the Pelton Decl. as **Exhibit C**.[1]

13. At all times during the settlement negotiation process, negotiations were conducted at an arm's-length basis.

14. The Parties agreed to settle this case for a total Settlement Amount of $3,200,000.00 (the "Settlement Amount"). (Ex. C (Settlement Agreement) § 1.24). The Settlement Amount covers Class Members' awards, Service Awards, administration fees and costs. (*Id.*) Defendants will pay the lesser of $3,200,000.00 or the amount claimed by the Participating Class Members, plus amounts ordered by the Court for Attorneys' Fees, Service Awards, and Settlement Administrator expenses, but in no amount less than $2,000,000.00, to the Settlement Administrator in a single lump-sum payment by the later of January 31, 2016 or five (5) days after settlement approval becomes final.

15. Class Members will have one hundred and twenty (120) days from the date of mailing to cash their Settlement Checks, and Class Members may request a replacement check for up to four (4) months after expiration of the 120-day period. (*Id*. at ¶ 3.1 (D)).

---

[1] Unless otherwise stated, all exhibits refer to exhibits attached to the Pelton Decl.

## IV. Preliminary Approval of Settlement and Dissemination of the Notice

16. On July 6, 2015, the Court preliminarily approved the parties' proposed class settlement and authorized the issuance of Notice to Class Members. (*See* Dkt. No. 111). The Court also approved, with modifications, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing, ("Notice") and claim form (together with the Notice, the "Notice Packet") and authorized the mailing of the Notice Packet to the Class Members. (*See id.*)

17. Pursuant to the Court's Order, Defendants provided Class Counsel with a confidential list of Class Members from each diner location which included, to the extent maintained by Defendants, the Class Members' names, title, last known address, dates of employment with Defendants and department (i.e, position). Class Counsel forwarded the confidential list to the settlement administrator, American Legal Claims Services, LLC (ALCS) (the "Settlement Administrator").

18. ALCS was provided the class lists and determined that there were 180 unique Settlement Class Members on the lists. (Declaration of Benny Davis, Jr. regarding proof of mailing (hereinafter, "Davis Decl.") ¶ 4). ALCS processed the Class Member data through the National Change of Address ("NCOA") database and the Coding Accuracy Support System ("CASS") to obtain and standardize the most recent mailing addresses and determine the deliverability of each address. (*Id.*).

19. The Settlement Administrator mailed the Notice Packet in English and Spanish to the class members via first-class mail, postage pre-paid to 169 class members with valid addresses. (*Id.* at ¶ 6). Additionally, ALCS caused the mailing of the notice and claim form via Electronic mail to 11 class members. (*Id.*).

20. The Settlement Administrator took reasonable steps to obtain correct address information for any Class Member for whom the Notice Package was returned. (*Id*. at ¶ 7). If the Class Member's notice was returned as an FOE their address would have been updated in our system and the notice would have been re-mailed to the updated address. (*Id*.).

21. Ultimately, there were 17 Notice Packets returned to ALCS as undeliverable. (*Id*. at ¶ 8).

22. The Settlement Administrator performed a second mailing of the Notice Packet to those class members who had not submitted a claim form. (*Id*. at ¶ 10). The second mailing went to 89 class members (*id*.), 12 of which were returned as undeliverable. (*Id*.).

23. The Settlement Administrator received a total of 176 claim forms before the November 23, 2015 claim form deadline. (*Id*. at ¶ 15). Of the 176 claim forms, 29 were duplicates, leaving 147 valid claim forms. (*Id*. at ¶ 18).

24. There were no class members who opted out of the Settlement and only one (1) class member who submitted an objection. (*See* Pelton Decl. Ex. B (Wyler Opt-Out)).

## V. Contributions of the Named Plaintiffs

25. The Named Plaintiffs were integral in initiating this class action and made significant contributions to the prosecution of the litigation. (*See* Pelton Decl. ¶ 14). The Named Plaintiffs served the class by providing detailed factual information regarding their job duties and hours worked, and the job duties and hours worked of the class members, assisting with the preparation of the complaint, keeping informed and in constant communication with Class Counsel regarding the progress of their action, sitting for depositions, and assuming the burden associated with being a named plaintiff and assisting with litigation. (*Id*. at ¶ 16).

26.     In addition, the Named Plaintiffs assisted Class Counsel with the settlement negotiations, attended a full-day mediation and a lengthy settlement conference with the Court and made themselves available throughout the lengthy settlement process. (*Id*. at ¶ 17).

27.     The Named Plaintiffs also assumed other professional risks and burdens, including the potential for retaliation and blacklisting in the industry.

28.     Without the effort of the Named Plaintiffs, this case on behalf of the Class would not have been brought, and this settlement would not have been achieved.

29.     Service Awards of this type are commonly awarded in complex wage and hour litigation.

## VI.    Final Approval of Class Settlement

30.     The Court held a fairness hearing on December 10, 2015.

31.     Having considered the Motion for Final Approval, the supporting declarations, the arguments presented at the fairness hearing, and the complete record in this matter, for good cause shown, the Court (i) grants final approval of the settlement memorialized in the Settlement Agreement, attached to the Pelton Decl. as Exhibit C; (ii) approves the service payments to the Named Plaintiffs in the amount of $3,500 each; (iii) approves an award of attorneys' fees and costs in the amount of $350,000.00 (10.9% of the settlement amount); and (iv) approves an payment in the amount of $8,043.89 to American Legal Claims Services, LLC (ALCS), the Settlement Administrator, for administration fees.

32.     Under Fed. R. Civ. P. 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is "fair, reasonable and adequate." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 04 CIV. 8141 DAB, 2013 WL 1499412 (S.D.N.Y. Apr. 11, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the

negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). Courts examine procedural and substantive fairness in light of the "strong judicial policy favoring settlements" of class action suits. *Massiah v. MetroPlus Health Plan, Inc.*, No. 11–cv–05669 (BMC), 2012 WL 5874655, *2 (E.D.N.Y. Nov. 20, 2012) (Cogan, J.) *citing Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal- Mart Stores*, 396 F.3d at 116 (internal quotations omitted).

33. If the settlement was achieved through experienced counsels' arm's-length negotiations, '[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Massiah*, 2012 WL 5874655, at *2, citing *In re Top Tankers, Inc. Sec. Litig*., 06 Civ. 13761 (CM), 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008)(same); "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *Id*., *citing Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *4 (S.D.N.Y. May 11, 2010). "The Court gives weight to the parties' judgment that the settlement is fair and reasonable." *Id*. (citations omitted).

### A. Procedural Fairness

34. It is clear from the history of the case that the parties reached this settlement only after engaging in extensive investigation and discovery which allowed each side to assess the potential risks of continued litigation, and robust settlement discussions, including in person

meetings and a lengthy settlement conferences with the Court. The settlement was reached as a result of arm's-length negotiations between experienced, capable counsel after meaningful exchange of information and discovery.

### B. Substantive Fairness

35. In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recover; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 WL 5874655 at *5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement. All of the *Grinnell* factors weigh in favor of granting final approval of the Settlement Agreement.

36. Litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

37. The response to the settlement has been positive. Class Counsel did not receive any requests for exclusion from the Settlement and only one (1) Class Member submitted an objection to the Settlement. (Pelton Decl. ¶ 13, Ex. B). "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern,* 553

9

F. Supp. 2d 337, 344–45 (S.D.N.Y.2008) (approving settlement where 13 out of 3,500 class members objected and 3 opted out); *see also Willix v. Healthfirst, Inc.,* No. 07 Civ. 1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (approving settlement where only 7 of 2,025 class member submitted timely objections and only 2 requested exclusion). Moreover, the solitary objection simply provided an unsupported argument that the total settlement amount should be higher. Thus, this factor weighs strongly in favor of approval.

38. The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (internal quotations omitted). The parties' discovery here meets this standard. Class Counsel interviewed dozens of current and former employees of Defendants to gather information relevant to the claims in the litigation; obtained, reviewed, and analyzed documents relating to the employment claims of the Plaintiffs; took and defended depositions; and analyzed thousands of pages of time and payroll records from Plaintiffs and Defendants. (Pelton Decl. ¶ 20).

39. The risk of establishing liability and damages further weighs in favor of final approval. A trial on the merits would involve risks because Plaintiffs would have to defeat Defendants' arguments that, *inter alia*, the Plaintiffs' claims were moot and that they were not entitled to relief on the IRS claim.. "Litigation inherently involves risks." *Massiah*, 2012 WL 5874655 at *4. The settlement alleviates this uncertainty. *See In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

40. The risk of maintaining the class status through trial is also present. Although the Plaintiffs have not yet moved for Rule 23 class certification, any such motion will be highly contested. Specifically, Defendants would argue that there are individualized questions as to the job duties and payment structure for the class members that make certification and ultimately trial on a class-wide basis impractical. Settlement eliminates the risk, expense, and delay inherent in this process. *Massiah*, 2012 WL 5874655, at *5.

41. The parties negotiated heavily over the settlement amount taking into account the litigation risk in proceeding on a class-wide basis towards summary judgment and trial. The parties also negotiated over the possibility that Defendants would shut down the diners and/or avoid any judgment. Even if the Defendants can withstand a greater judgment, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). This factor does not hinder granting final approval.

42. The substantial amount of the settlement weighs strongly in favor of final approval. "The determination whether a settlement is reasonable does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (W.D.N.Y. 2005) *citing In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 and *In re Michael Milken and Assocs. Sec. Litig.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993). "'Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."' Moreover, when a 'settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing "speculative payment of a hypothetically larger amount years down the road,"' settlement is reasonable under this factor."

*Massiah*, 2012 WL 5874655 at *5 (citations omitted). The eighth and ninth Grinnell factors favor final approval.

### VII. Approval of the FLSA Settlement

43. The Court hereby approves the FLSA settlement.

44. Because "the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," *Massiah*, 2012 WL 5874655, at *5, satisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement.

45. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bone fide disputes. *See Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 4082, 2010 WL 5507912, at *6 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *7 (S.D.N.Y. Aug. 23, 2010). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 at 1353–54 (11th Cir.1982). If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement. *Id.* at 1354; *Diaz*, 2010 WL 5507912, at *6; *deMunecas*, 2010 WL 3322580, at *7.

46. The Court finds that the FLSA settlement was the result of contested litigation and arm's-length negotiation, and that the settlement terms are fair and appropriate.

### VIII. Dissemination of Notice

47. Pursuant to the Preliminary Approval Order, Notice was sent by first-class mail to each identified Class Member at his or her last known address (with re-mailing of returned Notices) (Davis Decl. ¶¶ 6-13). The Court finds that the mailed Notice fairly and adequately advised Class Members of the terms of the settlement, as well as the right of Class Members to opt out of the class, to object to the settlement, and to appear at the fairness hearing conducted

12

December 10, 2015. (*See* Davis Decl. Ex. A). Class Members were provided the best notice practicable under the circumstances. The Court further finds that the Notice and distribution of such Notice comported with all constitutional requirements, including those of due process.

**IX.     Award of Fees and Costs to Class Counsel and Service Awards to Named Plaintiffs**

48. Class Counsel did substantial work identifying, investigating, prosecuting, and settling the Named Plaintiffs' and the Class Members' claims.

49. Class Counsel have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage-and-hour law and in class action law.

50. The work that Class Counsel have performed in litigating and settling this case demonstrates their commitment to the Class and to representing the Class's interests.

51. The Court hereby awards Class Counsel $350,000.00 for attorneys' fees and costs.

52. The Court finds that the amount of fees requested is fair and reasonable.

53. Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation.

54. All of the factors in *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) weigh in favor of a fee award of $350,000.00.

55. The attorneys' fees awarded and expenses reimbursed, shall be paid from the settlement amount.

56. The Court finds reasonable service awards to the Named Plaintiffs in the amount of $3,500.00 each. These amounts shall be paid from the settlement. Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and

continuing as a litigant, and any other burdens sustained by plaintiffs. *See, e.g., Toure*, 2012 WL 3240461 at * 5 (E.D.N.Y. Aug. 6, 2012) (approving service awards of $10,000 and $5,000); *see also Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 200–01 (S.D.N.Y. 1997) ("The guiding standard in determining an incentive award is broadly stated as being the existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claims, and, of course, the ultimate recovery.").

57. The Court finds reasonable the fees of American Legal Claims Services, LLC (ALCS), and orders that payment in the amount of $8,043.89 for those fees be made from the settlement amount.

## X.    Conclusion and Dismissal

58. The Court approves the terms and conditions of the Settlement Agreement.

59. The parties shall proceed with the administration of the settlement in accordance with the terms of the Settlement Agreement.

60. The entire case is dismissed on the merits and with prejudice, with each side to bear its own attorneys' fees and costs except as set forth in the Settlement Agreement. This Final Order and Judgment shall bind, and have res judicata effect with respect to all FLSA Collective Action Members, and all Rule 23 Class Members who have not opted out of the applicable class.

61. The Court approves and incorporates herein by reference the releases and waivers set forth in the Settlement Agreement which shall be binding upon the Class Members as set forth in such agreement.

62. Neither this Order, Settlement Agreement, nor any other documents or information relating to the settlement of this action shall constitute, be construed to be, or be admissible in any proceeding as evidence (a) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under Rule 23 of the Federal Rules of Civil Procedure or comparable state law or rules, (b) that any party has prevailed in this case, or (c) that the Defendants or others have engaged in any wrongdoing.

63. Without affecting the finality of this Final Order, the Court will retain jurisdiction over the case following the entry of the Judgment and Dismissal until 30 days after the end of the time for class members to cash their settlement check has expired, as defined in the Settlement Agreement. The parties shall abide by all terms of the Settlement Agreement and this Order.

64. This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure.

It is so ORDERED this _____ day of _____, 2015.

                                                      Honorable Roanne L. Mann
                                                      United States Magistrate Judge